JAMES W. BROWN, plaintiff in error, vs. SOLOMON NEWSOM, et al., defendant, in error.

M. bought of N. a tract of land, and took a bond for titles, conditioned as follows: "The above bound N. holds a Sheriff's deed to said land which was sold under execution, and the said N. being apprehensive that a claim may shortly be set up by some other person to said land, agrees that if he establishes his title when said apprehended claim is made, that he will then make to said M. good and lawful titles, and that if he fails to establish his title, and the land should be claimed and held by suit at law, by another, before the notes for the purchase money become due, then he shall give up said notes, and if said apprehended claim should be established after said notes have been paid, then N. shall pay back to M. the amount so paid, and interest; and if suit for said land is brought against M., N. binds himself to pay cost and expenses." More than twenty years elapsed after the date of this bond, and the purchase money never having been paid, and titles never having been executed by N., he brings ejectment against the assignee of M. for the land.

*Held*, That upon the payment of the purchase money and interest by M's assignee, he was entitled to hold the land against N. and that his rights under the bond were not affected by the statute of limitations, or lapse of time.

In Equity, from Dooly Superior Court.  Decision by Judge Powers, at October Term, 1857.

*Motion to Dissolve Injunction.*

This bill was filed by James W. Brown, against Solomon Newsom, Henry D. Mashburn, and Louisa Oliver, for relief, discovery and injunction.

The bill alleges in substance, that in October, 1833, Newsom sold to one David Mashburn, a tract of land in Dooly county, for the sum of two hundred dollars, one half payable 25th December, 1834, and the other half payable 25th December, 1835, and for which Mashburn gave his notes. Newsom at the same time executing and delivering to Mashburn his obligation in the penal sum of two hundred dollars, conditioned as follows, viz: "The above bound Solomon, holds a Sheriff's deed to said land, which was sold under execution in favor of Newsom, and bought by him, and the said Newsom, being apprehensive that a claim may shortly be set up by some other person to said land, agrees that if he establishes his title when said apprehended claim is made, that he will then make to said David Mashburn good and lawful titles to said land, No. 179, third district Dooly county, and that if said Newsom should fail to establish his title and the land should be claimed and held by suit at law by another, before the said notes become due, then he shall give up the said notes, and if said apprehended claim should be established after said notes have been paid, then Newsom shall pay back to Mashburn the amount so paid for said land and interest; and if the suit for said land is brought against Mashburn, Newsom binds himself to pay the cost and expense thereof."

The bill further states, that in virtue of said contract, Mashburn entered into possession of said land and remained in possession of the same until his death in 1835.  That said lot of land although not cleared or improved by Mashburn in his lifetime, nor by his administrators or distributees after

his death, yet the same was contiguous to his other lands on which he resided, and on which he made improvements, and the lot purchased of Newsom was held as part of his settlement, and from which he, and his distributees after his death, cut timber and firewood. That Mashburn died intestate, leaving as his heirs at law his widow, and three children, Henry D., Elizabeth, and Louisa Mashburn; the latter of whom subsequently married James G. Oliver, now deceased. That the widow of said David died in 1835, and his daughter Elizabeth, five or six years afterwards; that there was no administration on the estate of either. That administration on David Mashburn's estate was granted to Allen Waters in 1835; that suits were instituted in the lifetime of David Mashburn for said land, but at whose instance or of what precise character, complainant is not able to state on account of the record being destroyed by fire; but said suits were determined in favor of Mashburn's estate in 1836 or 1837, and Waters the administrator, afterwards tendered to Newsom the principal and interest due for said land, and demanded of him titles for the same, which he refused to receive; and also refused to execute titles, saying that " at the end of seven years from that time, he would make titles upon payment of the notes." That said land was returned, inventoried, and appraised as the property of David Mashbun, deceased, and as such duly administered, and that letters of dismission from the administration have been granted.

That in 1843 or 1844, the estate of David Masburn was divided agreeably to law, between the said Henry D. Mashburn and James G. Oliver, in right of his wife, and that due return was made of said division to the proper Court, but the records thereof destroyed by the fire aforesaid, which occurred in 1847; that said land with other adjoining lots, fell to the share of Oliver, and was used and held by him as part of his plantation.

The bill further states, that on the 10th December, 1853, complainant purchased said lot of land, together with anoth-

er lot and a half contiguous thereto, from said Oliver, for the sum of $3,200—lot No. 179, being estimated at about $1,250— and received from Oliver his deed for the same; and that he has made extensive and valuable improvements thereon, and said lot is now worth $3,000. That Newsom brought an action against complainant for said land, to April Term, 1855, of Dooly Superior Court, to which he pleaded the general issue and the statute of limitations, and upon the trial at May term, 1856, a verdict was had and judgment entered against complainant for said lot, and from which judgment complainant appealed, and the cause is now pending on the appeal in said Superior Court.

The bill alleges that at the time complainant purchased said lot from Oliver, he had no knowledge or intimation of any outstanding or adverse title in another. That Oliver is dead and his estate insolvent, leaving his wife, the said Louisa, surviving : Offers to pay Newsom the principal and interest of the original purchase money due by Mashburn ; prays that upon the payment of the purchase money and interest, that Newsom be compelled and decreed to execute to him good and legal titles to said land, and that said Henry D. and Louisa refund to him, whatever sum he shall pay Newsom; or at least, that Newsom shall pay to complainant the value of the improvements he has put upon said lot, and that he be enjoined from the further prosecution of his said suit at law.

The injunction issued upon the fiat of the Judge.

The defendant Newsom, demurred to the bill :

1st. For misjoinder of parties ; no sufficient cause being shown in the bill for joining him with the other defendants.

2d. Because there was no equity in the bill ; more than twenty years having elapsed since the sale of said land to Mashburn, without any consideration whatever, except his insolvent notes, not a dollar of which has ever been paid.

And with his demurrer, defendant Newsom answers the bill, admitting the contract with David Mashburn, for the sale of the land, as set out in the bill, but denying that Mashburn or any one else ever took possession of said land until complainant entered, shortly before the commencement of said suit against him by defendant; and submits that the occupation and improvement of adjoining lands by Mashburn could in no sense be held as an occupancy or possession of lot 179. Has no knowledge when Mashburn died, nor who are his heirs at law, nor does he know anything about any suits against him for the recovery of said land, and does not believe there were any. Denies that there ever was a tender to him of the amount due on the notes for the purchase money, or that he refused to receive the same, or made the remark alleged in the bill; no such tender was ever made, nor any such conversation *ever held.* At that time, he would have been glad to have received the money and made titles to said land, as he was ever ready to do, until the notes were barred by the statute of limitations. Knows nothing of said lot being appraised as part of the estate of David Mashburn, or its division amongst his heirs at law; knows nothing of complainant's purchase from Oliver—Oliver had no legal title to the land, and this was notice to complainant not to buy. Does not admit that either Mashburn or Oliver occupied or improved said lot, and is informed and believes they never did. Admits that said lot is valuable, worth two thousand dollars or more, and that he has commenced his suit at law against complainant for its recovery. Pleads lapse of time as a bar to complainant's claim.

The defendant Newsom, upon the filing of his answer, moved to dissolve the injunction and dismiss the bill as to himself.

After argument, the Court granted the motion; dissolved the injunction, and dismissed the bill as to Newsom.

To which decision counsel for complainant excepts.

MILLER & HALL, for plaintiff in error.

S. T. BAILEY, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

Independent of the allegation in the bill, of the tender of the purchase money by Waters as the administrator of Mashburn, which is denied by the defendant, we hold, that there is equity in the bill.

The bond itself is peculiar. It contemplates, that the vendee will go into possession of the land, for it is so expressed upon its face; but when or how long it might be before titles could be made, is uncertain. The notes for the two installments of the purchase money fell due at the end of the years 1834 and 1835, respectively; and there was nothing to prevent their collection. If the land was recovered of Mashburn before the notes were paid, they were to be given up. If afterwards, the amount with the interest was to be refunded. There was nothing in the contract, we repeat, to prevent the collection of these notes. Why has payment of the purchase money never been demanded? Is there no fault on the part of the vendor, in this matter,—especially looking to the contingency in the bond, upon which he was to make titles? There was some obligation upon him to move in this matter. He had a right to suppose that Mashburn was occupying the land, for the bond says, he was to go into possession. Why does Mr. Newsom stand aloof, and even now treat the subject as though he had no more to do with it than any third person? Had he performed his duty, Brown would not have been involved in the unpleasant predicament of having purchased a lot of land at a high price, upon which he has made valuable improvements, and bought it too, not of squatters or interlopers, but of the heirs of him to whom it was sold by Mr. Newsom; and who have never

refused to comply with their part of the contract. For it is a singular fact, that Mr. Newsom has never taken the first step to collect his money ; and the vendee has never refused to pay the price stipulated ; and while the *vendor* is setting up the plea of the statute of limitations for the vendee, as an excuse for not performing his part of the agreement, the vendee repudiates the interposition of this shield to screen him, and says, no ; "I will pay the money, and here by my bill offer to do so !"

Had Mr. Newsom demanded his pay instead of resorting to an action of ejectment, he might have got it, and this is all he ever was entitled to. He prefers however to wait twenty years and then bring ejectment for the land, and say in his answer to the bill, that he would gladly have made titles at any time before the notes for the purchase money were barred, while no one pleads the bar but himself. The vendee does not; and whose fault is it, that they are barred. We insist from the nature of the contract, that the vendor had something to do himself, relative to this matter.

This is not a case for the statute of limitations, on either side. The possession set up under the bill, is not to constitute a statutory bar, by reason of an adverse holding. The vendee could never acquire a statutory title as against the vendor in this case. His possession might be adverse as to third persons, and so Mr. Newsom himself seems to think. For he says that, the outstanding claim which he apprehended, was at the instance of one Byne of Burke and which he says "must have been long since barred." How barred ? Mr. Newsom himself has never been in possession, nor any one else, except Mashburn, and those holding through him. And yet the defendant while denying all knowledge of their possession, and expressing the belief that the lot never was occupied until bought by Brown in 1853, still thinks that Byne has been barred long since, by reason of this very possession.

Why then, under the circumstances, should Mr. Newsom

not be decreed to accept the purchase money and execute a title, and be perpetually restrained from the further prosecution of his suit at law, to recover the land? This was his bargain, the other side have never repudiated it. They are willing to pay and pray to be permitted to do so. If they have been negligent, Newsom is far from being blameless in the same respect. True, lands may have risen in value; why did he not collect his money twenty years ago, that he might have re-invested it, as he says, he could have done, and *perhaps lost it?* He no doubt took less for the land than it would otherwise have brought, on account of the cloud which hung over the title. The purchase money with interest thereon at eight per cent. will amount at this time to some six hundred dollars. Be this sum more or less, than the present value of the land, there is more equity in compelling him to comply with his contract, than to allow him to evict the tenant under the facts of this case. If the legal bar of twenty years has not run against Newsom's bond, and from the proof, it had not, it is needless to talk about lapse of time. It has no application to the case. From 1837, to the filing of the bill for specific performance, is less than twenty years. Apart from strict law, however, we think the equity of the case is with the complainant.

Judgment reversed.